*Western District*

No. 185426

## EDWARD A. HINCH d/b/a
## EAST LONGMEADOW REALTY

v.

## MALCOLM P. PARKHURST

Argued: Jan. 16, 1967     Decided: Feb. 23, 1967

*Present:* Garvey, P.J., and Levine, Allen, J.J.

Case tried to *Sloan, J.* in the District Court of Springfield   No. 185426

*Garvey, P. J.*   In one count, the plaintiff, a licensed real estate broker, alleged he had performed his obligations under the terms of two written brokerage contracts entered into with the defendant and was entitled to a commission by virtue of a sale made by the defendant of his home in Springfield during the life of the contracts. There was a finding for the plaintiff and the defendant claimed a report of the denial of certain of his requests for rulings of law and the finding. The judge made no findings of fact.

From the exhibits and reported evidence it appears that the defendant in November of 1964, employed in the Springfield area, decided to seek employment in the Boston area, and at this time, took steps to sell his home. An agent of the plaintiff, who had originally sold the home to the defendant, and had appraised it at his request in October or November, was contacted in early January, 1965.

On January 7, 1965 the parties executed a multiple listing service contract, so-called, (hereinafter referred to as the "exclusive contract") which gave the plaintiff until April 7, 1965, the "sole right to sell or exchange" for $22,900.00 the home of the defendant for which he would be paid a stated commission in the event of a sale.

In late February or early March the defendant advised the agent of the plaintiff that he

thought he might secure employment locally and expressed the desire to take his home "off the market".

On March 18, 1965, up to which time the plaintiff's efforts had not produced a buyer, the parties executed a second contract, hereinafter referred to as the "withdrawal contract".

On May 5, 1965 the defendant entered into a written agreement to sell, later consummated, his home to a Mr. and Mrs. Hanson for $20,-000.00. This agreement and sale is the basis of the plaintiff's claim for a commission.

As to the defendant's dealings with the Hansons the reported evidence shows the following:

In late December of 1964 or early January of 1965, prior to either contract, at the invitation of the defendant, the Hansons who had previously expressed an interest in buying, inspected the home as prospective purchasers. Mr. Hanson at this time stated he was not interested in buying it. Thereafter, as related above, the plaintiff was contacted.

In March of 1965 the Hansons again visited the defendant's home. At this time they expressed an interest in buying if it was out of the hands of real estate brokers. A short time later the defendant told Mr. Hanson that the home was "off the market", because of the possibility he might secure employment in Springfield. In substance, the same statement

was made by the defendant's wife to Mrs. Hanson after April 7, 1965.

In late April the defendant secured a position in the Boston area and so advised the Hansons who again inspected the home, and on May 5, 1965 agreed to buy it.

The Hansons never met or had any contact with the plaintiff, his agents or members of the Multiple Listing Service.

Bad faith, if any, on the part of the defendant was eliminated as an issue in the case by the action of the judge in granting defendant's request for a ruling reading: "The evidence does not warrant a finding that the defendant withdrew the listing from the plaintiff in bad faith".

We hold, therefore, that the "exclusive contract" was effectively cancelled on the execution by the parties of the "withdrawal contract", and any obligations of the defendant thereunder were extinguished.

The pertinent provision of the "withdrawal contracts" reads:

"In consideration of the cancellation of said contract [exclusive contract] and the withdrawal of said property from Multiple Listing Service, the undersigned owner agrees that if the property is offered for sale, contracted for sale, agreed to be sold, or sold to or with any person within the period of the original listing, terminating April 7, 1965, *or if the property is offered*

*for sale, contracted for sale, agreed to be sold, or sold to or with any person to whom the property has been shown within the period of the original listing terminating April 7, 1965 or for ninety (90) days after said termination date,* either for the price set forth in the Multiple Listing Service contract or for any other price, or upon any other terms which may be acceptable to me, I will pay the standard rate of commission of the Springfield Board of Realtors to the Broker herein". (Emphasis supplied).

Were the Hansons, on the reported evidence "person(s) to whom the property *had been shown* within the period of the original listing (exclusive contract) terminating April 7, 1965, or for ninety days after said termination date" (emphasis added) is the only question presented for our determination.[1]

The interpretation presents "a pure question of law". *Taylor* v. *Gowetz,* 339 Mass. 294, 300. *Daley* v. *J. F. White Contracting Company,* 347 Mass. 285, 288. See also: *King Fea-*

---

[1] Although no request of the defendant for a ruling was directed to this issue, we are of the opinion, on this report, that it is properly presented. See *Barton* v. *Cambridge,* 318 Mass. 420, 424. *Muto* v. *Deslauriers,* 292 Mass. 405, 408. The defendant's other requests, all denied, directed the judge's attention to whether the "exclusive contract" was bilateral or unilateral and whether the plaintiff was the predominant and efficient cause of the sale.

*tures Syndicate, Inc.* v. *Cape Cod Broadcasting Co., Inc.,* 317 Mass. 652.

We apply the long standing rule of written contract interpretation recently reiterated in *Whitney* v. *American Fidelity Company,* 350 Mass. 542, where the court said at page 580: "There was at least ambiguity present in the definition of the 'uninsured automobile' and 'any ambiguity must be resolved against the defendant. The contract was drawn by the defendant and it would have been an easy matter to state the provisions of the section in dispute in form and words which would leave no doubt as to its intent'. *Mac Arthur* v. *Massachusetts Hosp. Service, Inc.,* 343 Mass. 670, 672.''

The quoted paragraph in the "withdrawal contract" is contained in a printed form in common use by real estate brokers and seems to have as its principle purpose the protection of a broker against an owner having, or attempting to have, the benefit of his services without paying a commission. Any ambiguity in this contract, as held in *Whitney* must be resolved against the plaintiff.

Webster's New International Dictionary, 2nd and 3rd editions, define "shown" as a past participle of "show". In the second edition the word "show" in the first of many definitions is defined as: "To present to or place in sight; exhibit; display; as, to show a house . . . ." and in the third edition as "To conduct (as a per-

son or group) to or about a place or thing''. We think this is how it was intended to be understood by the parties of the withdrawal contract. Common knowledge tells us this is the meaning given to the word in the everyday speech of real estate brokers.

The plaintiff's right to a commission was limited, as we interpret the contract, to a sale made to persons directed or introduced to the property through, or by, his efforts. The Hansons were not in this category. They were not persons who ''had been shown'' the defendant's home by the plaintiff, as we understand this phrase in the context in which it was used. If it was intended that a commission was payable on a sale by the defendant to persons in the position of the Hansons it would have been an easy matter to so provide.

**The finding for the plaintiff is to be vacated and judgment ordered for the defendant.**

EDWARD R. GALLAGHER

of Springfield for the plaintiff

PHILLIP J. RYAN

of Springfield for the defendant